IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

LISA CROOM,                              :

    Plaintiff,                       :

vs.                                      :      CA 14-0585-C

CAROLYN W. COLVIN,                       :
Acting Commissioner of Social Security,
                                         :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 19 & 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the October 5, 2015 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 19 & 21 ("An appeal from a
(Continued)

Plaintiff alleges disability due to mild mental retardation, carpal tunnel syndrome/tendonitis of the right hand, migraine headaches, diabetes mellitus, and glaucoma. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since January 10, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> . . .
>
> 3. The claimant has the following severe impairments: tendonitis of the right hand, migraine headaches, diabetes mellitus, type II, learning disorder and glaucoma (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> Under the third step, a determination must be made as to whether or not the impairment or impairments are of listing severity. The Medical Listings (20 C.F.R. Part 404, Appendix 1, Subpart P) outline the findings which must be present under each of the body systems for an impairment to be found disabling. No medical expert has concluded that the claimant's impairments meet or equal a listed impairment.
>
> . . .
>
> The severity of the claimant's mental impairment does not meet or medically equal the criteria of listing . . . 12.05 for mental retardation. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means

---

judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

. . .

**5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant has no limitations to sitting, standing, walking, lifting, carrying, climbing, crawling, squatting, handling objects, using hand and foot controls, talking, listening and traveling. The claimant has no deficits in the ability to remember, understand and carry out simple tasks. She has no deficits in the ability to respond appropriately to supervisors, the public or in the ability to manage routine stressors in a work setting. The claimant has marked limitations in the ability to understand detailed or complex instructions, carry out detailed or complex instructions, remember detailed or complex instructions  and use judgment in detailed or complex work-related decisions.**

. . .

Ms. Croom testified she has never had a checking account. She has a driver's license but took the oral test two times before she passed.

. . .

Educational records were submitted from the Amelia Love Johnson High School. Report card for the first semester of 2005 when the claimant was in twelfth grade indicated 74 in English; 79 in Geometry-B; 91 in Government; 70 in applied chemistry; 92 in money dynamics; 100 in physical education and 80 in AHSGE social studies.

Third party function report was completed in November 2011 by Loretta Cox, the claimant's sister. . . . Ms. Cox accompanies her when she needs to go out because Ms. Croom cannot read too well. . . . She identified problems as [] memory, concentration, understanding, following directions and using hands. . . . She noted memory problems and does not understand what you have asked. She is not able to follow instructions too well . . . . She is not able to pay attention very long and is not able to finish what she starts. She cannot follow written or spoken directions very well because she is not able to read or understand. She does not get along with authority figures very well because she cannot follow directions.

. . .

3

Ms. Croom completed a Function Report—Adult in November 2011. On this form, she stated she lives in a house with her family. . . . She sometimes needs reminders to take care of her personal needs like combing her hair and putting on clothes. She does not need reminders to take her medicine. She does not prepare meals and does not perform household chores or yard work because of the pain in her hands. She does not go out often [but] is able to ride in a car. She is able to go out alone. The claimant does not drive because her hands would not let her steer well and they hurt. She is able to shop in stores for personal needs but does not go very often. She is not able to pay bills, count change, handle a savings account or use a checkbook/money order. Her sister pays the bills. . . . She listed hobbies as watching television and reading sometimes. She does these hobbies all the time but mostly watches television. . . . She spends time with others just sitting around, laughing and talking but she does not do these activities very often. On a regular basis, she takes her baby to the doctor, goes to church and goes to the grocery store when accompanied by a relative/friend. She does not go out often and does not take part in anything. When she goes out, she needs to be accompanied. Ms. Croom does not have any problems getting along with others. She identified problems as lifting, completing tasks and using her hands. . . . She cannot pay attention very long and does not always finish what she starts. She does not follow written or spoken instructions very well. She has never been fired or laid off from a job because of not getting along with others. She does not handle stress or changes in a routine very well.

. . .

The claimant has alleged an onset date of January 20, 2011. In connection with a prior application, Ms. Croom underwent a consultative mental health evaluation performed by Dr. Nina Tocci, licensed psychologist[,] on June 7, 2011. The diagnostic impressions were no diagnosis for Axis I and II and she was assigned a Global Assessment of Functioning of 85 indicating minimal symptoms and good functioning in all areas. Dr. Tocci administered the WAIS-III IQ test and the claimant obtained a full scale IQ score of 65. Dr. Tocci opined the scores were not valid and Ms. Croom's effort appeared to wane after initial subtests. The examiner stated the claimant performed the sample items flawlessly and then after the second or third items, she was not successful at any items. Dr. Tocci noted poor effort and stated the scores were not consistent with previous results of testing. She noted previous scores were extremely low and questionable. She noted the claimant did not appear to be invested in giving her best performance. Dr. Tocci suggested the claimant would benefit from vocational training and employment.

. . .

At the request of the Office of Disability Determinations, a consultative psychological evaluation was conducted by Dr. Richard Reynolds on November 22, 2011. Dr. Reynolds opined the claimant was malingering

during the interview and had a learning disability, provisional by history. Axis II was mild mental retardation, provisional. The claimant was administered the Wechsler Adult Intelligence Scale—Fourth Edition and obtained a full-scale IQ score of 55. Dr. Reynolds opined it was very difficult for him to reconcile an IQ score of 55 on the WISC-IV with an individual who has obtained a driver's license, even through oral means. It was difficult for him to understand how an[] individual with an IQ of 55 would have a significant work history of five years. It was difficult for him to understand how an individual with an IQ of 55 would pass the exit examination in social studies. There was some documentation regarding significant discrepancy among reasoning areas on IQ subtests, particularly on a unit examination. It is not noted on the transcript, which classes were special education classes or if the claimant received modifications for all classes. He opined the most likely diagnosis was learning disorder, not otherwise specified[,] with likely borderline to mild range of intellectual deficiency. Poor effort and inconsistencies on statements were noted on several evaluations. On the administration that day, Ms. Croom continued to demonstrate poor effort and he opined the current test results were not considered valid due to poor effort. He also noted that Ms. Croom did not allege intellectual deficiency and stated her disability was related to carpal tunnel syndrome and migraine headaches. Dr. Reynolds opined that the claimant was likely to demonstrate no deficits in the . . . ability to remember, understand and carry out simple tasks. She does not have any deficits in the ability to respond appropriately to supervisors, the public or the ability to manage routine stressors in a work setting. He based his opinion on prior work history and school history.

.   .   .

The claimant's attorney, Mr. Coplin[,] referred the claimant for a mental evaluation to include WAIS IV and WRAT III. Dr. Donald Blanton, licensed professional counselor, performed the evaluation on February 13, 2013. On the Wechsler Adult Intelligence Scale—Fourth Edition, Ms. Croom obtained a full scale IQ score of 65 placing her in the mild range of mental retardation. He summarized that academic achievement testing revealed that her academic skills would be of little use to her in a vocational setting. Both her intellectual and academic testing appeared to be valid. He noted the claimant appeared to have chronic pain but was emotionally healthy at this point in her life. Dr. Blanton diagnosed mild mental retardation, pain disorder without psychological features and financial problems. He offered a Global Assessment of Functioning of 60 indicating only moderate symptoms. Dr. Blanton opined the claimant had marked limitations in the ability to understand detailed or complex instructions, carry out detailed or complex instructions, remember detailed or complex instructions and use judgment in detailed or complex work-related decisions. She had functional adaptation problems in the areas of communication, work and functional academic skills.

5

DDS mental health consultant, Dr. Joanna Koulianos found that the claimant's allegations were only partially credible. She noted the claimant was able to understand, remember and carry out short and simple instructions and could concentrate and attend for reasonable periods of time. She noted contact with the general public should be limited and changes in work duties should be limited and introduced gradually. I agree in part with the assessment of the DDS mental health expert but instead ha[ve] assigned greater weight to the opinions of the consultative examiners, Drs. Reynolds and Tocci.

. . .

With regard to the claimant's mental limitations, I find that the claimant has a history of special education classes with IEP stating weaknesses in math and reading. Report card submitted from the Amelia Love Johnson High School indicated the claimant was taking Geometry, Applied Chemistry, Biology, US History and Applied Biology all with passing grades. I find it most unusual for an individual to be taking such accelerated classes with a learning disability.

In terms of the claimant's mental limitations, I have accepted the assessments of Drs. Reynolds at Exhibit 6F and Dr. Blanton at Exhibit 17F. Dr. Reynolds found that the claimant was malingering during the interview and the results of testing were invalid. He noted Ms. Croom demonstrated poor effort on testing. Dr. Reynolds diagnosed history of learning disorder and I agree with this assessment. He opined the claimant was likely to demonstrate no deficits in the ability to remember, understand and carry out simple tasks. She does not have any deficits in the ability to respond appropriately to supervisors, the public or in the ability to manage routine stressors in a work setting. He based his opinion on prior work history and school history. Dr. Blanton diagnosed mild mental retardation and opined that the claimant had[] marked limitations in the ability to understand detailed or complex instructions, carry out detailed or complex instructions, remember detailed or complex instructions and use judgment in detailed or complex work-related decisions. I have accepted the assessment of Dr. Blanton and found that the claimant could perform no more than unskilled work activity.

The claimant was evaluated in June of 2011 by Dr. Nina Tocci in connection with a prior application; however, it is after the alleged onset of disability. Dr. Tocci offered no diagnoses and assigned a GAF of 85 indicating only minimal symptoms and good functioning in all areas. Dr. Tocci opined the scores obtained on the WAIS-II[I] were not valid as Ms. Croom's effort appeared to wane after initial subtests. She stated the claimant did not appear to be giving her best performance. I find that the assessment of Dr. Tocci further confirms the conclusions of Dr. Reynolds as discussed above.

> Dr. Blanton found that the claimant had a valid IQ score of 65 placing her in the range of mild mental retardation. The diagnostic description of mental retardation reads, "mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period[,] i.e., the evidence demonstrates or supports onset of the impairment before age 22." It is noted that the full scale IQ of 65 would satisfy the first element in the introductory paragraph. However, element two then requires deficits in adaptive functioning, which is met as long as there are significant limitations in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, work, leisure, health and safety. The evidence supports that the claimant had deficits in only functional academics as educational records reported problems with math and reading. However, it is also noted that the claimant was taking Geometry, Applied Chemistry, Biology, US History and Applied Biology all with passing grades. Relevant to the other areas of adaptive functioning, the record shows that the claimant was able to successfully work for over five years. I find that the record fails to demonstrate the deficits in adaptive functioning as required by the core elements of mental retardation.
>
> In sum, the above residual functional capacity assessment is supported by medical evidence of record. I find that the claimant has severe impairments, but find that these impairments do not rise to the severity to be disabling.
>
> **6. The claimant is capable of performing past relevant work as a hand packer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**
>
> . . .
>
> **7. The claimant has not been under a disability, as defined in the Social Security Act, from January 10, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

(Tr. 13-14, 14, 15, 16, 16-17, 17, 17-18, 18, 18-19, 20-21, 22-23 & 23 (internal citations omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and, thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant establishes that she cannot perform her past relevant work, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment, which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as a hand packer, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Croom contends that the ALJ erred in rejecting the diagnosis of mental retardation and, in doing so, failed to provide a discussion to support the assertion that she did not manifest adaptive deficits, and additionally argues that the ALJ erred in finding that she does not meet Listing 12.05C. (Doc. 12, at 1; *see also id.* at 6-13.) Thus, given the nature of plaintiff's arguments, this case is solely a step three case. *See* 20 C.F.R. §§ 404.1520(d) & 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

In this circuit, Croom bears the burden of proving that she has an impairment which meets or is medically equivalent to a listed impairment. *Frame v. Commissioner, Social Security Administration*, 596 Fed.Appx. 908, 910 (11th Cir. Jan. 13, 2015) ("To prevail at step three, the claimant must provide specific evidence—such as medical signs, symptoms, or laboratory-test results—showing that her impairment meets or

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

medically equals a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). 'For a claimant to show that h[er] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'"). Once an impairment is shown to meet or medically equal a listed impairment, a claimant is "conclusively presumed to be disabled based on . . . her medical condition." *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997).

To establish presumptive disability under §12.05C, a claimant must present evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05C. In addition, while plaintiff must "also satisfy the 'diagnostic description' of mental retardation in Listing 12.05[,]"*Cooper v. Commissioner of Social Security*, 217 Fed.Appx. 450, 452, 2007 WL 543059, *1 (6th Cir. Feb. 15, 2007), citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001), the law in this circuit is clear that where, as here, a claimant has presented a valid IQ score of 60 to 70, she is entitled to the presumption that she manifested deficits in adaptive functioning before the age of 22, *Hodges v. Barnhart*, 276 F.3d 1265, 1266 & 1268-1269 (11th Cir. 2001).[4] Indeed, the Eleventh Circuit has concisely set forth what a claimant must prove in order to establish that she meets Listing 12.05 ("intellectual

---

[4] This presumption is rebuttable, the Commissioner being charged with the task of determining whether there is sufficient evidence (relating to plaintiff's daily life) to rebut the presumption. *Grant v. Astrue*, 255 Fed.Appx. 374, 375 (11th Cir. Nov. 13, 2007).

disability"[5]), and more specifically Listing 12.05C, in a recent, albeit unpublished, decision. *See Frame, supra,* 596 Fed.Appx. at 910-911.

> To meet listing 12.05 . . ., "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton,* 120 F.3d at 1219.[6] These requirements are referred to as the listing's "diagnostic criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for [intellectual disability].") In addition to satisfying the diagnostic criteria, a claimant must meet one of the four severity requirements in paragraphs A through D of the listing. *See id.* § 12.05. Under paragraph C, the only paragraph at issue here, a claimant must show that she has both "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

---

[5] "Effective September 3, 2013, the Social Security Administration replaced the term *mental retardation* with the term *intellectual disability* as a listed impairment. This change was made because 'the term "mental retardation" has negative connotations,' and 'has become offensive to many people.' But this change 'd[id] not affect the actual medical definition of the disorder or available programs or services.'" *Frame, supra,* 596 Fed.Appx. at 910 (internal citations omitted). Because the ALJ's decision issued before the change took effect (Tr. 24 (decision issued on May 3, 2013)), and the parties have made use of the old terminology, this Court will likewise utilize the old terminology. *See Hickel v. Commissioner of Social Security,* 539 Fed.Appx. 980, 982 n.2 (11th Cir. Oct. 28, 2013) ("Because the amendment does not effect a substantive change, and to avoid confusion, this opinion uses the term 'mental retardation' used by the parties and the ALJ.").

[6] "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. "'Adaptive functioning' refers to a person's ability to perform activities of daily living and social functioning." *Fischer v. Barnhart*, 129 Fed.Appx. 297, 301-302, 2005 WL 352451, *4 (7th Cir. Feb. 11, 2005) (citation omitted); *see also Hickel, supra,* 539 Fed.Appx. at 983 n.4 ("The Social Security Administration's Program Operations Manual System [] states that the phrase 'adaptive functioning' refers to 'the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age.' Similarly, the American Psychiatric Association states that the phrase refers to how effectively an individual copes with the common demands of life and how well the individual meets the standards for personal independence of someone in her particular age group, sociocultural background, and community setting." (internal citations omitted)); *Harper v. Colvin,* 2014 WL 3733119, *6 (N.D. Ala. Jul. 25, 2014) ("'[A]daptive activities' include 'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.'").

11

> A *valid* IQ score of 60 to 70 satisfies the first prong of paragraph C and creates a rebuttable presumption that the claimant satisfies the diagnostic criteria for intellectual disability. *See Hodges v. Barnhart,* 276 F.3d 1265, 1268-69 (11th Cir. 2001). At the same time, it is well established that such a presumption does not arise where a qualifying IQ score is inconsistent with other record evidence concerning her daily activities and behavior. *Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir. 1992) (citing *Popp v. Heckler,* 779 F.2d 1497, 1499 (11th Cir. 1986)). But once the ALJ accepts an IQ sore as valid and finds that the claimant's impairments meet or medically equal the other criteria of listing 12.05C, the disability determination cannot be based on the claimant's age, education, or work experience.
>
> In sum, a claimant proves that she meets listing 12.05C by establishing the diagnostic criteria for intellectual disability, including deficits in adaptive functioning[7]; showing onset before age 22; producing a valid, qualifying IQ score; and exhibiting the requisite deficits in work-related functioning.

*Id.* (footnote added); *see also Lackey v. Colvin,* 2014 WL 1338104, *12 (N.D. Ala. Mar. 28, 2014) ("[W]here the claimant relies on 12.05(C), the claimant must meet the three diagnostic requirements in the introductory paragraph and *also* meet the requirements set forth in (C)." (emphasis in original)).

With these general principles in mind, the Court considers the alleged errors made by the ALJ in this case, that is, whether the ALJ erred in "rejecting" the diagnosis of mild mental retardation, and in so doing failed to provide a discussion to support his assertion that she did not manifest adaptive deficits, and the additional argument that the ALJ erred in finding that she does not meet Listing 12.05C. This Court finds it unnecessary to address the penultimate issue of whether plaintiff meets 12.05C because it is clear that the ALJ's 12.05 analysis was deficient and it is left for the Commissioner

---

[7] "'The essential feature of Mental Retardation is significantly subaverage general intellectual functioning that is accompanied by significant limitations in adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'" *Tabor v. Astrue,* 2012 WL 1020432, *7 n.29 (N.D. Fla. Feb. 22, 2012) (quoting DSM-IV at 40), *report and recommendation adopted,* 2012 WL 1059089 (N.D. Fla. Mar. 27, 2012).

to determine on remand whether, in the first instance, plaintiff has sufficient adaptive functioning deficits to meet the requirements of the diagnostic description in Listing 12.05 before reaching the paragraph C requirement of the mental retardation listing. *Compare Hickel, supra,* 539 Fed.Appx. at 985 & n.9 *with Lackey, supra,* at *12 (until the requirements set forth in the introductory paragraph of § 12.05 are met, there is no need for the ALJ to discuss the specifics of paragraph C of Listing 12.05).

    This Court would be remiss if it failed to note that the ALJ not only makes perfunctory mention of Listing 12.05 at step 3 of his sequential analysis (Tr. 14) but also then leads the reader to believe that the analysis for whether Croom's mental impairment meets or equals the mental retardation listing at 12.05 is the same for other mental disorders (*see id.* ("[T]he undersigned has considered whether the 'paragraph B' criteria are satisfied. To satisfy the 'paragraph B' criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.")), when, of course, that is not the case at all, *compare* 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.00 ("The listings for mental disorders are arranged in nine diagnostic categories: Organic mental disorders (12.02); . . . intellectual disability (12.05) . . . . Each listing, ***except 12.05*** and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and ***paragraph B criteria (a set of impairment-related functional limitations)****. . . . **The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings***." (emphasis supplied)) *with Frame, supra,* 596 Fed.Appx. at 910-911. Whether it was because of this error at Step 3 of the sequential evaluation process, or plaintiff's identified error of the ALJ's "rejection" of the diagnosis of mild

13

mental retardation (Doc. 12, at 1), the undersigned need agree with plaintiff that the ALJ's abbreviated discussion of deficits in adaptive functioning is inadequate. Stated differently, substantial evidence of record does not support the ALJ's determination that Croom lacked the required level of deficits in adaptive functioning to meet Listing 12.05.

In this case, the ALJ found that despite Croom's valid IQ score of 65,[8] as found by Dr. Blanton, she did not have "deficits in adaptive functioning" based upon the following:

> *[E]lement two then requires deficits in adaptive functioning, which is met as long as there are significant limitations in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, work, leisure, health and safety. The evidence supports that the claimant had deficits in only functional academics as educational records reported problems with math and reading. However, it is also noted that the claimant was taking Geometry, Applied Chemistry, Biology, US History and Applied Biology all with passing grades. Relevant to the other areas of adaptive functioning, the record shows that the claimant was able to successfully work for over five years. I find that the record fails to demonstrate the deficits in adaptive functioning as required by the core elements of mental retardation.*

(Tr. 22 (emphasis supplied).) There are a number of problems with the ALJ's cryptic analysis of deficits in adaptive functioning. First, the ALJ's "list" of such deficits (*see id.*) is obviously incomplete in light of his very next sentence in which he explicitly finds

---

[8] There can be little question but that the ALJ implicitly acknowledged in this case that Croom's low IQ score began before the age of twenty-two (*see* Tr. 22) and, therefore, there was no need for the ALJ to mention the *Hodges* presumption. *See Garrett v. Astrue*, 244 Fed.Appx. 937, 939 (11th Cir. Jul. 3, 2007) ("It was not error for the ALJ not to mention the *Hodges* presumption because the ALJ did not challenge that Garrett's low IQ began before age twenty-two."); *compare id. with Hodges, supra,* 276 F.3d at 1266-1267 ("We agree with other circuits in concluding that there is a presumption that mental retardation is a condition that remains constant throughout life. Therefore, we find that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two. We reverse the district judge with directions to remand to the administrative law judge for a determination of whether there is substantial evidence to rebut this presumption of a fairly constant mental capacity before the age of twenty-two.").

deficits in functional academics (*id.*), as well as clear case law, *Tabor, supra,* at *7 n.29 ("'The essential feature of Mental Retardation is significantly subaverage general intellectual functioning that is accompanied by significant limitations in adaptive functioning in at least two of the following areas: *communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.*'" (emphasis supplied)). In addition to failing to include functional academic skills in his list, the ALJ also failed to include in that list "use of community resources" and "self-direction." Even if this Court was to conclude that the ALJ properly "rejected" the idea that plaintiff had deficits in any of the other areas he listed—besides functional academic skills where the ALJ found deficits—because she successfully worked for over five years (*see id.*),⁹ this analysis can in no manner be read to "touch upon" the unidentified areas of "use of

---

⁹ While the undersigned does not suggest that plaintiff's past work experience is not a relevant part of the analysis, the suggestion is made that more usually goes into the analysis, specifically a discussion of activities of daily living (and the like). *Compare O'Neal v. Commissioner of Social Security,* 614 Fed.Appx. 456, 459-460 (11th Cir. Jun. 10, 2015) ("The record shows that Mr. O'Neal held a job as a dishwasher for many years without receiving any special accommodation or training. He quit his job only for family reasons. Afterward, he worked occasionally as a handy man, helping with carpet and trim work and installing siding. Mr. O'Neal helps at home with light yard work, looks after his two children, independently performs all his activities of personal care and daily living, and attends church every Sunday. He holds a driver's license and drives locally three times per week. These facts support the ALJ's [] conclusion that, despite his low I.Q. score, Mr. O'Neal does not have sufficient adaptive functioning deficits to meet the requirements of the diagnostic description in Listing 12.05.") and *Perkins v. Commissioner, Social Security Admin.,* 553 Fed.Appx. 870, 873-874 (11th Cir. Jan. 22, 2014) (finding the ALJ did not err in considering the claimant's work experience *and* activities of daily living with respect to his adaptive functioning analysis in accordance with Listing 12.05) *with Hickel, supra,* at *984 ("There is evidence in the record to support the ALJ's findings with respect to Hickel's daily activities and behavior. Hickel does not dispute that she is a high school graduate, she works part time at a nursery, she drives herself to work, she can prepare simple meals and dress and groom herself, she attends church regularly, and she socializes with friends.") and *Garrett, supra,* 244 Fed.Appx. at 939 ("The record supports the finding by the ALJ that the required limitations to adaptive functioning were not present, despite Garrett's low IQ score. Garrett is able to cook simple meals; perform chores such as dishwashing and yard work; and build model cars. Garrett's daily activities include church attendance, television viewing, card playing, and walking in the mall. Garrett also testified that, with orientation and instruction, he believed he could return to a job as a stock assistant.").

community resources" and "self-direction" (*see* Tr. 22) and, therefore, the undersigned would be placed in the position of having to do that which only the ALJ is authorized to do and that is to weigh (or effectively reweigh) the evidence and come to a decision regarding whether Croom possesses the required level of deficits in adaptive functioning to meet Listing 12.05. *See Davison, supra,* 370 Fed.Appx. at 996 (recognizing that courts are precluded from deciding the facts anew or reweighing the evidence). And, or course, this Court has no desire to engage in any weighing or reweighing of evidence in a case, like the present one, where the ALJ has ignored evidence of record of other deficits in adaptive functioning. Most notably, Dr. Blanton specifically determined in his report that Croom had functional adaptation problems in the areas of communication, work, and functional academic skills (Tr. 609) and Croom's special education teacher, Rose Wolf, completed a questionnaire in 2006 which implicates deficits not only in the area of functional academic skills but also in the areas of self-care, social/interpersonal skills, and communication (*see* Tr. 343-350).

In consideration of the foregoing, this Court simply cannot find that substantial evidence of record—identified by the ALJ—supports the finding that Croom lacked the required level of deficits in adaptive functioning to meet Listing 12.05. *Cf. Hubbard v. Colvin,* 2016 WL 624403, *3 (11th Cir. Feb. 17, 2016) ("[W]e decline to affirm using reasoning that 'might have supported the ALJ's conclusion' but was not offered by the ALJ himself. *See Owens v. Heckler,* 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)."). Accordingly, this cause is due to be remanded to the Commissioner of Social Security for further consideration of the issue of deficits in adaptive functioning and, if necessary, whether plaintiff has a physical or other mental impairment imposing an additional and significant work-related limitation of function, as required by paragraph C of Listing 12.05.

## **CONCLUSION**

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 31st day of March, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**